OPINION JUDGMENT ENTRY
{¶ 1} Defendant-appellant Chetney Brown, appeals his conviction and sentence from the Richland County Court of Common Pleas on one count of rape, a felony of the first degree, in violation of R.C. 2907.02. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS {¶ 2} On January 22, 2002, the Richland County Grand Jury returned an indictment charging appellant with one count of rape, a felony of the first degree, in violation of R.C. 2907.02 and one count of intimidation of a victim of a crime, a felony of the third degree in violation of R.C. 2921.04 (B).
 {¶ 3} A jury trial commenced on April 11, 2002. Among the witnesses who testified at trial were the alleged victim, Tracy Lambert, and the appellant. The jury was unable to reach a unanimous decision on either count and the trial court declared a mistrial on April 12, 2002.
 {¶ 4} On August 14, 2002, the State filed a motion in limine seeking to limit the defense from eliciting testimony from the victim or putting on additional evidence regarding the victim's sexual activities with individuals other than the accused pursuant to the Rape Shield Law under R.C. 2907.02 (D). The State was seeking to exclude evidence that the complaining witness was pregnant, that she was in the hospital due to complications from her pregnancy and that the pregnancy was a result of sexual activity with a third party. The trial court granted the State's motion in limine. (T. of Motion to Suppress and Motion In Limine, Aug. 14, 2002 at 3.) At the August 14, 2002 hearing, the trial court further ruled that due to the unavailability of Ms. Lambert her testimony from the first trial would be read into evidence at appellant's second jury trial.
 {¶ 5} A re-trial commenced on August 15, 2002. The victim, Tracy Lambert, was confined to a hospital bed and therefore unable to testify. Pursuant Evid. R. 804, her prior testimony from the April 11, and 12, 2002 jury trial was read into evidence for the jury.
 {¶ 6} The appellant was present throughout this trial. On August 16, 2002, during the second day of the second jury trial, the appellant took the witness stand In a non-responsive statement to a question from the prosecutor concerning some minor inconsistencies in appellant's testimony, the appellant, told the jury that the reason the victim was not present in the courtroom to testify "was because she was pregnant with a baby and that she was in the hospital and that she had had a miscarriage." (Judgment Entry, Oct. 3, 2002).
 {¶ 7} The court declared a mistrial. The court further found the defendant in direct contempt. (Judgment Entry, Oct. 3, 2002). The judge found that the appellant had intentionally caused a mistrial. The court sentenced the appellant to ninety days in jail for the contempt. Further, the court issued the following ruling: "2. At the re-trial in this case, because of defendant's refusal to abide by the orders of the court, he shall participate in the trial as follows: a. He may watch and listen to trial by close circuit television from the video arraignment room. At the close of jury questioning, after the State's opening statement and closing argument, after the direct examination of each witness and at any other time desired by defense counsel, defense counsel will be permitted to consult with his client. b. When and if Mr. Brown desires to testify, the jury will be sent out, Mr. Brown will testify in the courtroom on video tape, and the video tape (with any misbehavior edited out) will then be shown to the jury." (Judgment Entry, Oct. 3, 2002).
 {¶ 8} On October 21, 2002, the State filed a motion to take a video taped deposition of the complaining witness, Tracy Lambert, to be played at the appellant's third jury trial. On November 1, 2002, the trial court granted the State's motion under Crim. R. 15 to permit a video-taped deposition of Tracy Lambert to be played at trial in the appellant's third jury trial. The court found that the complaining witness, Tracy Lambert, suffers from advanced Lupus and severe Rheumatoid Arthritis. Due to her serious illness, it was the opinion of her physician that she was too ill to testify in person at the trial, and that doing so would cause her serious physical and emotional health problems.
 {¶ 9} The video-taped deposition was scheduled for November 1, 2002. The trial judge presided over the deposition of Ms. Lambert. Prior to commencing the start of the deposition, defense counsel objected to the deposition on the grounds that the complaining witness' medical condition was not so severe that she could not testify at trial. Appellant's counsel offered no evidence in support of this assertion. The trial court overruled this objection, and the deposition went forward with the trial judge presiding.
 {¶ 10} Appellant was not physically present in the courtroom, with Ms. Lambert or his attorney. He viewed the proceedings from the arraignment room via a closed circuit video tape monitor. Appellant had no communication device where he could communicate contemporaneously with his attorney during the questioning of Ms. Lambert. A video monitor was in the courtroom whereby Ms. Lambert could see the appellant in the video arraignment room.
 {¶ 11} After approximately one hour and fifteen minutes of cross-examination, the trial court informed defense counsel that he would have twenty minutes within which to finish his cross-examination of the complaining witness. Defense counsel objected to this limitation indicating that he had numerous questions to ask of the complaint. At the conclusion of twenty minutes, the trial court indicated it would give counsel additional time to ask a few more pertinent questions. Trial counsel declined this offer. Trial counsel indicated he had numerous other questions he would like to ask of this witness; however he did not proffer the questions or the subject matters for the record on appeal. The trial court overruled the objections. Thereafter, the prosecutor waived the re-direct examination. The deposition was then concluded. On December 13, 2002, the trial court conducted an evidentiary hearing. (Judgment Entry, Dec. 23, 2002). The defendant and the prosecuting attorney were present during this hearing. Dr. David Stadnick, who is the treating physician of Tracy Lambert, testified that it was his medical opinion that Tracy Lambert was too ill to testify in person at the trial and also too ill to continue with further depositions. Id.
 {¶ 12} A review of the record in this case indicates that the transcript of the December 13, 2002 hearing in which Dr. Stadnick testified is not part of the appellate record.
 {¶ 13} Defendant's third jury trial was commenced on December 17, 2002. The appellant was not permitted to be physically present in the courtroom per the court's order finding him in direct contempt. The court informed the jurors that Mr. Brown would not be directly in the courtroom except by video hookup. The court further informed the jurors as follows: "He will participate fully throughout the trial. But because he caused a mis-trial in — refused to follow my recommendations, or follow my order, he in fact, has lost his privilege to be in the courtroom. So he will be [sic] participate in that way."
 {¶ 14} "I don't know if you can see him up there on the screen yet. When you are up here in the jury box, you will be able to see him fairly well." (T. at 26-27). Appellant's counsel objected to his client's exclusion from the courtroom and requested the appellant be permitted to come into the courtroom with alternative means to control his activity. (Id. at 157). The trial court denied this request. (Id. at 158).
 {¶ 15} The following evidence was presented at trial.
 {¶ 16} Appellant and his wife Pauline were married in 1997. Tracy Lambert is the adult daughter of Pauline. Ms. Lambert and her son lived with appellant and her mother on an on-and-off basis during the years due to her medical condition. Ms. Lambert suffers from Lupus and Rheumatoid Arthritis. There is no cure for either disease and both are progressive diseases.
 {¶ 17} Ms. Lambert's treating physician, Dr. David Stadnick, testified that Ms. Lambert's arthritis has fused most of her joints. Both of Ms. Lambert's knees have been replaced, her elbows are fused and locked, and her fingers and hands have been rendered nearly useless.
 {¶ 18} Sometime in November or December 2000, Ms. Lambert told her mother appellant had tried to get into bed with her, but she was able to kick him out. When confronted, appellant stated that Tracy was lying about the incident. The police were called to the home. Ms. Lambert and her son were forced to move out of the residence.
 {¶ 19} Several weeks later, Ms. Lambert and her son returned to the home of her mother and appellant. Ms. Lambert's room was in the basement of the residence.
 {¶ 20} Ms. Lambert testified that appellant came down to her bedroom, pulled the covers off of her and forced her to engage in sexual intercourse. Ms. Lambert was unable to fight back due to her medical condition. Appellant held his hand over her mouth during the incident to stifle her scream. She begged appellant to stop, but he refused. After the incident, appellant ordered Ms. Lambert to take a bath. Ms. Lambert noticed that the bath had already been drawn, and that the lock had been removed from the bathroom door. Ms. Lambert pretended to comply by splashing her hand around in the bath water. Appellant threatened to hurt her and her mother if she told anyone what had happened.
 {¶ 21} When appellant left the home to purchase cigarettes, Tracy called her Aunt, Gloria Lambert, for help. Upon her arrival at the home appellant left the residence.
 {¶ 22} Officer Roosevelt Scott, of the Mansfield Police Department testified that upon being questioned by the police, appellant initially stated that Ms. Lambert had climbed on top of him while he slept and began having sex with him.
 {¶ 23} Office Harold Scott confronted appellant about the improbability of his version of the incident. Shortly thereafter, appellant gave a second statement to the police in which he stated that he and Ms. Lambert had been having a lengthy affair and that the sexual encounter was consensual.
 {¶ 24} Lori Kehres, a sexual assault nurse examiner testified that Ms. Lambert was examined and found to have tears and abrasions to her Labia Majoria, redness to her cervix, bruising on the knee and leg and tenderness to her chest and wrist. Based upon the history given by Ms. Lambert, Nurse Kehres, stated that the injuries were consistent with sexual assault. On cross-examination, Nurse Kehres indicated that without the history, the injuries could have been caused by consensual sex.
 {¶ 25} Appellant's testimony was presented by video tape pursuant to the court's earlier ruling.
 {¶ 26} Appellant testified that he and Ms. Lambert had been having an affair. He testified she was upset because he would not tell his wife. He admitted that he did not tell the police the truth in his first statement claiming that he was frightened of losing his wife. He claimed that after he spoke to his wife, she encouraged him to be honest with the police.
 {¶ 27} Appellant claimed that he and Tracy had consensual sex after which she became enraged that appellant would not leave his wife. He claims that he left the house because the argument was becoming too heated.
 {¶ 28} The appellant's third jury trial concluded on December 20, 2002, with the jury finding appellant guilty on one count of rape and not guilty on one count of intimidation of a crime victim. The trial court deferred sentencing.
 {¶ 29} On December 23, 2002, the trial court conducted a sentencing hearing. The trial court sentenced the appellant to nine years in a State penal institution. The court further found the appellant to be a sexual predator and a habitual sexual offender.
 {¶ 30} Appellant timely filed a notice of appeal and set forth the following four assignments of error:
 {¶ 31} "The trial court prejudicially erred, and defense counsel was ineffective where evidence regarding the defendant's prior sexual assault convictions were admitted into evidence, further, where defense counsel elicited the same testimony, and did not object when the prosecutor continued to elicit the same testimony. This error resulted in the defendant being denied a fair and impartial trial.
 {¶ 32} "The trial court denied the defendant a fair and impartial trial where it found the defendant in contempt and, without just cause, punished the defendant by taking away his right to be present and to confront witnesses at trial. Further, where the trial court's punishment was unreasonable, unconstitutional and excessive especially given the substantially harmless acts of the defendant which resulted in the initial finding of contempt.
 {¶ 33} "The defendant was denied his right to a fair and impartial trial where he was denied his constitutional right to cross-examine and confront the alleged victim.
 {¶ 34} "The assignments of error, taken individually or collectively were seriously prejudicial to the defendant and resulted in the denial of his constitutional right to a fair and impartial trial."
 I {¶ 35} Appellant submits that trial counsel's eliciting appellant's prior criminal record was ineffective because such evidence was prohibited "other acts" testimony, and further, the testimony was barred by the so-called "rape shield" statute, R.C. 2907.02 (D).
 {¶ 36} The rape shield law in Ohio, R.C. 2907.02 (D) essentially prohibits the introduction of extrinsic evidence pertaining to either the accused's or the victim's sexual activity. The exceptions to this prohibition are evidence of the origin of the semen, pregnancy, or disease, or of the defendant's past sexual activity with the victim.
 {¶ 37} Rule 404(B) of the Ohio Rules of Evidence provides: "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 38} This rule of evidence is codified in R.C. 2945.59, which provides: "[i]n any criminal case which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with prior or subsequent thereto, notwithstanding with such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 39} Section 2945.59 is to be strictly construed against the State, and to be conservatively applied by a trial court. State v. DeMarco
(1987), 31 Ohio St.3d 191, 194, 509 N.E.2d 1256.
 {¶ 40} However, credibility may be attacked by evidence that the accused has been convicted of a crime pursuant to Evid. R. 609. State v.Camel (1984), 12 Ohio St.3d 306, 466 N.E.2d 860. As the evidence in the case concerned appellant's prior conviction, it is not "other acts" testimony.
 {¶ 41} Further, "R.C. 2907.02 (D) does not prohibit use of evidence of conviction of a defendant of a crime admissible by Evid. R. 609(A) for the sole purpose of attacking the credibility of him as a witness." Statev. Byrd (Dec. 10, 1981), 10th Dist. No. 81AP384. In State v. Roberts
(June 11, 1981), 10th Dist. No. 81 AP-18, the court explained "[w]e do not believe R.C. 2907.02 (D) was designed to exclude the use of prior convictions for the purpose of impeaching an accused's credibility. The evidence excluded is that of specific instances of defendant's sexual `activity'; the statute does not even purport to effect evidence of an accused's `convictions.' Furthermore, the language `under this section' clearly establishes that the exclusion applies only to matters within the scope of the `rape shield law'; if matters are admissible under some other statute or rule for another purpose, they are not necessarily excluded under R.C. 2907.02 (D)." Id.
 {¶ 42} Accordingly, appellant's reliance on R.C. 2945.59 and 2907.02
(D) are completely misplaced. Rather, the use of prior convictions are governed by Evid. R. 609 and Evid. R. 403. It is this standard that the court will use to address appellant's claim that his prior conviction for sexual battery was not admissible at trial.
 {¶ 43} Evid. R. 609 provides: "(A) For the purpose of attacking the credibility of a witness:
 {¶ 44} "(1) Subject to Evid. R. 403, evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to law under which the witness was convicted.
 {¶ 45} "(2) Notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 46} "(3) Notwithstanding, Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or a false statement, regardless of the punishment and whether based upon State or Federal Statute, or Local Ordinance. * * *"
 {¶ 47} Evid. R. 403 reads:
 {¶ 48} "(A) Exclusions mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 49} "(B) Exclusions discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 50} As we noted in State v. Smith (Aug. 20, 1999), 5th Dist. No. 98-CA-6: "[u]nder Evid. R. 609, a trial court has broad discretion to determine the extent of the admissibility of prior convictions for impeachment purposes. State v. Wright (1990), 48 Ohio St.3d 5,548 N.E.2d 293. In determining whether prior convictions should be admitted or whether the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issue or of misleading the jury, the trial court should consider the following factors: `(1) The nature of the crime, (2) recent of the prior conviction, (3) similarity between the crime for which there was a prior conviction and the crime charged, (4) importance of the defendant's testimony, and (5) centrality of the credibility issue.' State v. Goney (1993), 87 Ohio App.3d 497,501, 622 N.E.2d 688. The State bears the burden of demonstrating that probative value of the evidence outweighs its prejudicial effect. Id. A trial court's decision whether to admit or exclude evidence of prior convictions is reviewable for abuse of discretion. State v. Lane (1997),118 Ohio App.3d 230, 692 N.E.2d 634." Id. at *4.
 {¶ 51} In Wright, supra, the accused was indicted on four counts of rape and one count of kidnapping. 48 Ohio St.3d at 6, 548 N.E.2d at 924. Prior to trial, appellant filed a motion in limine to exclude any reference to his two prior convictions for gross sexual imposition. Id. at 7, 548 N.E.2d at 924. The trial court overruled the motion. Id. At the trial, appellant testified, as did his employer. Id. at 7-8,548 N.E.2d at 925. The court held that because appellant had placed his character in issue, testimony concerning his prior conviction was proper. Id. at 8,548 N.E. at 926. A similar result was reached State v. Earls (March 29, 1993), 11th Dist. No. 92-L-054. In Earls, the defense brought out the appellant's prior sexual convictions on direct examination after the trial court denied a motion in limine to exclude the prior convictions. Based upon State v. Wright, supra, the Court of Appeals found evidence of the appellant's prior convictions were properly admitted by the trial court. Relevant to the case at bar, the court made the following observations: "[w]e appreciate the tactical dilemma faced by appellant's attorney. Does one attempt to soften the evidence's impact by fully admitting it; or, does one wait until its introduction at trial and object, thus preserving the issue for appeal?
 {¶ 52} "In choosing to anticipate the issue by raising it on direct examination, appellant cannot now raise it here on appeal * * * No doubt, it was a difficult choice, but we presume that counsel made it knowingly." Id. at * * * 6.
 {¶ 53} In the case at bar, the defense was that the victim had consensual sex with appellant and therefore was lying about a rape. The credibility of the appellant and the victim were central to a determination of the issues. Accordingly, "there was greater, not less compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed." State v. Goney (Aug. 3, 1993), 87 Ohio App.3d 497 502, 622 N.E.2d 688, 692. (Quoting Gordon v.United States (C.A.D.C. 1967), 383 F.2d 936, 941).
 {¶ 54} In the case at bar, neither the prosecutor nor appellant's trial counsel brought out the underlying facts regarding appellant's prior conviction. The trial court further prohibited the State from eliciting evidence that the prior conviction contained a physical harm specification. (T. at 329-331). The State was permitted to present evidence that appellant had lied to his wife about his prior conviction. (T. at 295-99). Accordingly, the evidence in the case at bar was used for credibility not propensity of the appellant.
 {¶ 55} As the evidence of appellant's prior conviction was admissible at trial, the trial court did not err, nor was counsel ineffective.
 {¶ 56} Appellant's first assignment of error is overruled.
 II {¶ 57} In his second assignment of error, appellant challenges the trial court's ruling excluding him from the courtroom during his third jury trial in this case.
 {¶ 58} The issue arose in the following way. Appellant was present and testified at his first trial. The first trial ended with the jury unable to reach a unanimous verdict. At his second jury trial, appellant was present without incident during the majority of the proceeding. Prior to the commencement of the second jury trial, the trial court had granted the State's motion in limine to exclude any reference to the fact the complaining witness was engaged in sexual activity with a different man subsequent to the date of the incident on which appellant was being tried; that she had become pregnant by the other man; and that she was hospitalized and unable to appear at trial due to complications with her pregnancy. (T., Aug. 14, 2002 at 2-3).
 {¶ 59} The facts surrounding appellant's expulsion from the courtroom center upon appellant's cross-examination during the second jury trial. Those facts have been set forth in the statement of facts, supra.
 {¶ 60} Thereafter, prior to the start of the third jury trial, the court permitted a video-taped deposition of the complaining witness, which was to be used at trial, pursuant to Crim. R. 15. Appellant was not permitted to be physically present during the deposition. As at the third jury trial, appellant was permitted to watch the proceedings via a closed-circuit video monitor.
 {¶ 61} Accordingly, the issues in this case involve two distinct areas implicating appellant's constitutional rights: 1). Exclusion from the video-taped deposition of the complaining witness taken before appellant's third jury trial; and 2). Exclusion of the appellant from the courtroom during the entire third jury trial.
 {¶ 62} The video taping of the complainant's testimony in the case at bar was not done by virtue of any statute similar to R.C. 2945.481, R.C.2945.48 or Evid. R. 807. The testimony was taken pursuant to Crim. R. 15. (Judgment Entry, Nov. 1, 2002). Crim. R. 15 provides, in relevant part:
 {¶ 63} "(A) If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and it further appears that his testimony is material and that it is necessary to take his deposition in an order to prevent a failure of justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place * * *"
 {¶ 64} Crim. R. 15 gives the accused the right to attend the deposition and to cross-examine the deponent. Crim. R. 15(C) and (E).
 {¶ 65} A defendant's rights to confrontation and cross-examination of witnesses apply in the taking of a video-taped deposition to be used against the defendant in a criminal trial. State v. Wilkinson (1980),64 Ohio St. 2 308 415 N.E.2d 261 at para. 1, syllabus. Appellant's counsel did cross-examine the complainant during the deposition. Accordingly, at issue in this case is the appellant's right to a face-to-face confrontation of his accuser. Coy v. Iowa (1988),487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801. (Citing Kentucky v. Stincer
(1987), 482 U.S. 730, 748-50, 107 S.Ct. 2658, 2669-70. (Marshall J. Dissenting)).
 {¶ 66} The Confrontation Clause of the Six Amendment, made applicable to the States by the Fourteenth Amendment, provides: "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witness against him." Section 10, Article I of the Ohio Constitution provides that "the party accused shall be allowed * * * to meet the witnesses face-to-face * * *; but provision may be made by law for the taking of the deposition by the accused or by the State, to be used for or against the accused, of any witnesses whose attendance cannot be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witnesses face-to-face as fully and in the same manner as if in court. * * *" Coy v. Iowa, supra, 487 U.S. at 1016,1018 S.Ct. at 2800; State v. Self (1990), 56 Ohio St.3d 73, 76, 564 N.E.2d 446,450. Section 10, Article I of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment. State v. Self, supra,56 Ohio St.3d at 79, 564 N.E.2d at 453.
 {¶ 67} The Confrontation Clause reflects a preference for face-to-face confrontation at trial. Maryland v. Craig (1990), 497 U.S. at 836, 849,110 S.Ct. 3157, 3165; State v. Self, supra, 56 Ohio St.3d at 77,564 N.E.2d at 450. The preference for face-to-face confrontation must occasionally yield "where denial of such confrontation is necessary to further an important policy and only where the reliability of the testimony is otherwise assured * * *" Craig, supra, 497 U.S. at 850,110 So. Ct. at 3166. (Citations omitted).
 {¶ 68} Both Craig and Self, supra, dealt with specific legislation permitting a child witness to testify via close-circuit television or via video-taped deposition in a child molestation case. The court's found such a procedure not to violate the Confrontation Clause only if the trial court makes specific findings in the case:
 {¶ 69} "The requisite finding of the necessity must of course be a case specific one; the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. * * * The trial court must also find the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. * * * Finally, the trial court must find the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than `nervousness or excitement or some reluctance to testify.' * * *" Craig, supra, at 855-56,110 S.Ct. at 3169.
 {¶ 70} The decision to allow the complainant's video tape deposition in the case at bar was based upon the "serious illness" of the complainant (Judgment Entry, Nov. 1, 2002). There are no particularized findings that the procedure was employed to protect her from the appellant. Accordingly, the appellant's confrontation right would take precedence.
 {¶ 71} The trial court's decision to exclude appellant from physically being present during the deposition is based solely on his misconduct during the second jury trial.
 {¶ 72} The appellant was physically present during the testimony of the complainant in his first jury trial. The record contains no evidence that he misbehaved in any way during her testimony, or the testimony of any other witness. The video-taped testimony was recorded outside the presence of the jury. Any concern that appellant might misbehave was of little consequence. Any inappropriate behavior could have been edited out of the video tape that would have been shown to the jury. This is precisely what the trial court ordered with respect to presenting the appellant's testimony by video tape. (Judgment Entry, Oct. 3, 2002).
 {¶ 73} It may be argued that appellant waived his right to be present at the video-taped deposition due to his misconduct during his second jury trial. This argument brings into the equation the appellant's right to be present in the courtroom during every stage of the trial.
 {¶ 74} The United States Supreme Court has stated that one of most basic rights reserved by Confrontation Clause is a defendant's correlative right to be present in the courtroom in every stage of the trial. Ilinois v. Allen (1970), 397 U.S. 337, 90 S.Ct. 1057. Presence is also required by Section 10, Article I, Ohio Constitution and Crim. R. 43(A). Appellant's presence is mandated unless he waived his right or there existed extraordinary circumstances requiring sequestration, such as misconduct. State v. Williams (1983), 6 Ohio St.3d 281, 286,452 N.E.2d 1323.
 {¶ 75} A defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom. Allen,397 U.S. at 343, 90 S.Ct. at 1060-1061. Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with decorum and respect inherent in the concept of courts and judicial proceedings. Id.
 {¶ 76} It is undisputed that the trial court excluded appellant from attending both his own trial and the video-taped deposition of the complaining witness by placing him in the video arraignment room and having him view the proceeding via a video-tape monitor. Appellant could not communicate with his attorney contemporaneously with the testimony of the witnesses. At no time did the trial court conduct a hearing or inquire of the appellant whether he could be brought back into the courtroom if he promised to be on his good behavior. Defense counsel specifically informed the trial court that the appellant would agree to behave in the subsequent trial. (T. at 157-158).
 {¶ 77} In the case at bar, there is no evidence of disruptive, combative, disrespectful behavior on appellant's part during the first jury trial. The record is devoid of any indication of improper behavior by the appellant during the majority of the second jury trial. The single instance of misbehavior occurred during the second jury trial when appellant was testifying on cross-examination.
 {¶ 78} A review of the record in this case reveals insufficient evidence to demonstrate that appellant's conduct was so disorderly, disruptive or disrespectful of the court that the trial could not be carried on with him in the courtroom. The trial court never gave appellant the right to re-enter the courtroom even after assurances by counsel that appellant would not cause any problems. To suggest that a defendant can be denied his fundamental constitutional right to be present during his trial and present to confront his accuser based upon speculation concerning his future misbehavior, is to ignore the mandates of Allen, supra, and its progeny, that a defendant can regain his right to attend his trial. Virtually any defendant who is difficult to deal with could be barred from the courtroom because he "might" act up in front of the jury, or because the trial judge "doesn't trust him." Such expansion of the rule would emasculate the Confrontation Clause. Accordingly, on these facts, we find that the trial court excluded appellant from the deposition and his own trial in violation of his Constitutional rights.
 {¶ 79} However, our inquiry does not end with the finding that appellant's Constitutional rights were violated. The United States Supreme Court has held that a defendant's conviction shall not be reversed on the basis of a Constitutional error if the error is found to be harmless beyond a reasonable doubt. Coy v. Iowa, supra, 487 U.S. 1012, 1021-1022,108 S.Ct. 278. (Citing Chapman v. California (1967), 386 U.S. 18, 24,87 S.Ct. 824.). In Coy, supra, the court made the following finding: [a]n assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." 487 U.S. at 1021-1022,108 S.Ct. at 2803. In State v. Marshall 6th Dist. No. L-001381, 2002-Ohio-4826, the court stated: "[i]n this case, appellant was unconstitutionally excluded from the courtroom for virtually the entire course of his trial. Therefore, none of the evidence produced by the prosecution may be considered by this court on appeal. Without that evidence, appellant could not have been convicted of the crimes with which he was charged. Such an error cannot reasonably be deemed harmless." Id. at 59.
 {¶ 80} In the case at bar, because appellant's Constitutional rights to face-to-face confrontation and right to be present during all stages of his trial were violated, we find appellant's second assignment of error is well taken.
 III {¶ 81} In his third assignment of error, appellant contends that the trial court erred by permitting the video-taped testimony of the victim and further by limiting the appellant's cross-examination of that victim during her video tape deposition.
 {¶ 82} We have previously addressed appellant's contention concerning the violation of his Constitutional rights to face-to-face confrontation during video-taped deposition in Assignment of Error II, supra. Accordingly, we find this issue to be moot.
 IV {¶ 83} In his fourth assignment of error appellant argues the errors taken individually or collectively are serious enough to warrant reversal in his case.
 {¶ 84} Based on our disposition of Assignment of Error II, supra, we find this argument to be moot.
 {¶ 85} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is reversed and the case is remanded to the trial court for further proceedings in accord with law and consistent with this opinion.
Gwin, P.J., and Boggins, J., concur Wise, J., concurs separately.