DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a July 20, 2005 judgment of the Wood County Court of Common Pleas, wherein a jury found appellant, Armin L. Ryan, guilty of aggravated burglary, a first-degree felony in violation of R.C.2911.11(A)(1); kidnapping, a first-degree felony in violation of R.C. 2905.01(A); and rape, a first-degree felony in violation of R.C. 2907.02(A). Appellant raises the following assignments of error:
 {¶ 2} "Appellant received ineffective assistance of counsel in violation of his rights under the Sixth andFourteenth Amendments to the United States Constitution and Article I, § 10
of the Constitution of the State of Ohio.
 {¶ 3} "The evidence provided in this case was insufficient to support the convictions, and even if found to be sufficient for the jury's consideration, the convictions were ultimately against the manifest weight of the evidence."
 {¶ 4} On March 17, 2005, the Wood County grand jury indicted appellant on the aforementioned one count of aggravated burglary; one count of robbery; one count of kidnapping with specifications that appellant is a repeat violent offender and a sexually violent predator, and a sexual motivation specification; and one count of rape with repeat violent offender and a sexually violent predator specifications. The grand jury also indicted appellant on a fifth count, specifically, one count of corrupting another with drugs in violation of R.C. 2925.02(A)(1), a felony of the second degree. The state later moved to dismiss the repeat violent offender specifications and Count 5 (corrupting with drugs charge) of the indictment. The trial court granted both motions. On May 17, 2005, the case proceeded to trial, at which the following evidence was presented.
 {¶ 5} During the early morning hours of March 5, 2005, appellant approached the victim, Tracy Gahan, who was standing at the jukebox in Mad Anthony's Bar in Waterville, Wood County, Ohio. She and appellant talked for a while until "last call" was announced, at which time appellant invited Gahan to play cards at the apartment above the bar. It is at this point that the testimony of the events that ensued differ significantly. Appellant testified that he and Gahan ended up in the bathroom of the apartment, and Gahan performed fellatio on him. Gahan, however, testified that she went to the bathroom, and appellant walked in on her as she was washing her hands.
 {¶ 6} In any event, appellant and Gahan subsequently left the apartment together; however, the reason for doing so is in dispute. Appellant claimed Gahan inquired about getting cocaine and promised him "a good time" if he did. Gahan, on the other hand, testified that appellant suggested that they go to the "East Side" to get "a bag of weed" and some playing cards. Gahan further stated that it was not abnormal for her and her friends to play cards after the bar closed.
 {¶ 7} After they got in appellant's vehicle, appellant headed toward Perrysburg. Along the way, Gahan needed to use the restroom so appellant stopped at a gas station. Appellant went to the restroom, too. Back in appellant's vehicle, appellant told Gahan he purchased some cocaine from a friend he saw in the gas station. Appellant later testified that he bought aspirin because he thought Gahan was drunk and would not know the difference. Gahan said she "did not want to be around that" and started to get out of the vehicle. She said that at this point appellant reached over, shut the door, and told her not to "freak out" because "he wasn't going to do it." She maintained appellant told her that they were going to a friend's house to play cards.
 {¶ 8} Appellant proceeded to take Gahan to a trailer in Perrysburg under the pretense of playing cards. Gahan said that appellant claimed the trailer was his. Appellant, however, maintained that the trailer was owned by a friend and that he could utilize it anytime. Once inside the trailer, appellant testified that he and Gahan went to the back bedroom, talked for a while, and started kissing. He further stated that Gahan indicated she wanted to do some cocaine, so they went to the bathroom and "did a line." After that, appellant claimed that they ended up back in the bedroom where he had oral sex with her, and that they then had intercourse. Appellant stated that at this juncture, Gahan complained she was not getting "high," so they left and "drove out the same way [they] came in."
 {¶ 9} The following testimony, as offered by Gahan, presents a markedly different version of the events of that occurred after she and appellant entered the trailer on the morning of March 5, 2005. Once inside the trailer, appellant pulled Gahan into the bathroom, told her to sit on the ledge of the tub, and pulled out the cocaine. When Gahan tried to get up and leave, appellant pushed her back down and told her she was not going anywhere. Appellant licked his thumb, put it in the powder, and rubbed his thumb on her gums. He told Gahan, "Now you can't go to the cops because you have cocaine in your system. They won't believe you." Appellant then pulled her into a bedroom, pushed her down, and started taking off his pants. Gahan started crying and tried to get away, but she could not escape. Appellant took off her shoes, pulled down her pants, and started "poking [her] vagina" with his penis. As she tried to "scootch away from him," appellant penetrated her a "little bit." Appellant then suddenly sat back on his knees and asked Gahan if she was scared. When Gahan responded "Yes.", appellant said, "Good. That will teach you not to leave a bar with someone you don't know."
 {¶ 10} Appellant then allowed Gahan to go to the bathroom, but followed her in, and forced his penis into her mouth. He then pulled her by the hair back to the bedroom and pushed her down as she tried, unsuccessfully, to hold onto the door frame. Appellant then "put his penis inside" Gahan. She again tried to move away, but couldn't because he put one hand on her neck and the other over her mouth and nose. Appellant told Gahan that he would take away his hand if she would be quiet, but she started crying and asked him to stop. At this point, appellant placed something "cold and round" at her temple and told her that if she was not quiet, he would kill her and "splatter [her] brains across the wall and bury [her] where nobody could find [her]." Gahan said she stopped fighting him, and he continued to rape her.
 {¶ 11} Subsequently, appellant let Gahan go to the bathroom again, but followed her and once more forced his penis into her mouth. Appellant then compelled her to snort what he initially told her was cocaine, pulled her back into the bedroom, and raped her again. When she resisted appellant's attempt to rip off her shirt, he responded, "It doesn't matter because when I'm done, I'm going to make you run down the street naked and shoot you in the back anyways." In response to appellant's threats, Gahan stopped fighting and pretended to enjoy herself. After appellant was done, he let her get dressed, and they left.
 {¶ 12} On the way to Waterville, in an attempt to escape, Gahan told appellant she needed cigarettes. Appellant stopped at a gas station, and they both went inside. Appellant stood "real close" to Gahan while she waited in line and told her if she tried anything, he would kill her and everyone there. Gahan stalled and said she needed to use to restroom. When she asked the clerk for the key, she mouthed the words, "Call the police." Satisfied that the clerk understood, Gahan walked outside toward the restroom and appellant followed.
 {¶ 13} The gas station clerk then called 911 and told the dispatcher that a customer needed the police. From inside the bathroom, Gahan pounded on the door that connected to the store. The clerk let her in, and Gahan, who was shaking and crying, told her why she needed the police and provided appellant's license plate number. Appellant left the scene during this time. After police officers arrived, they took Gahan to the hospital where she went through a rape examination. The nurse who examined Gahan testified that she was visibly upset and shaken. She also testified that she had found bruises on Gahan's legs and signs of blunt force trauma in the vaginal area. Afterwards, Gahan was transported to the police station where she was interviewed and identified the trailer to which appellant had taken her. During the interview, Gahan had to excuse herself several times because she felt ill and thought she was going to vomit.
 {¶ 14} Officers subsequently searched the trailer and noticed that the front door was damaged. Although appellant's witness, who had previously owned the trailer, testified that he had given appellant permission to enter the trailer, a second witness, Katrina Vanderhorst, testified that she owned the trailer on the night in question and that she had not given anyone permission to enter the trailer. Vanderhorst further testified that the door frame had not been broken prior to March 5, 2005.
 {¶ 15} The officers proceeded to collect evidence from inside the trailer, which included two areas in the bedroom with bodily fluids on them. The officers also found a broken earring, which belonged to Gahan, on the bedroom floor. The next day, Gahan identified appellant in a photo array. Officers later went to appellant's home to arrest him, but he was not there. Upon consent of the homeowner, officers searched the residence and recovered a pair of boots with a sole pattern similar to an impression left on the carpet in the trailer. One of the officers also saw the vehicle with the license plate number Gahan had given them, and inside, found a wallet which contained "personal items and papers and cards" belonging to appellant.
 {¶ 16} Following the five-day trial, the jury found appellant guilty of aggravated burglary, kidnapping and rape. The jury also found that appellant committed the kidnapping offense with a sexual motivation and that he failed to release the victim in a safe place unharmed. On June 8, 2005, appellant filed a motion for acquittal, which the trial court denied.
 {¶ 17} On July 8, 2005, the trial court conducted a sexually violent predator hearing, a sex offender classification hearing and a sentencing hearing. The judge found that appellant was a sexually violent predator and ordered him to register accordingly. Appellant was sentenced to nine years imprisonment as to the aggravated burglary offense, 15 years to life as to the kidnapping offense, and 15 years to life as to the rape offense. The trial court ordered the minimum terms imposed for the kidnapping and rape offenses to be served consecutively. The trial court further ordered the aggravated burglary sentence to be served concurrently with the kidnapping and rape sentences and concurrently with appellant's prior Lucas County sentence.[1] This appeal now follows.
 {¶ 18} In his first assignment of error, appellant argues that he was deprived effective assistance of counsel. He raises the following four specific instances for our review:
 {¶ 19} "(1) the decision to allow appellant to take the stand in his own defense; (2) the decision to question appellant on direct examination in sordid detail about prior crimes and acts which examination effectively `opened the door' to the State's questioning of appellant about these same crimes and acts; (3) failure to then object vigorously to questioning of appellant by the State on cross-examination; [and] (4) failure to object to examination by the State that elicited objectionable responses from other witnesses, and most particularly as related to examination of the alleged victim."
 {¶ 20} The United States Supreme Court devised a two-prong test to determine ineffective assistance of counsel. Stricklandv. Washington (1984), 466 U.S. 668, 687. First, the defendant must show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment of the United States Constitution. Id. Deficient performance means performance falling below an objective standard of reasonable representation. Id.
 {¶ 21} Second, defendant must establish that counsel's "deficient performance prejudiced the defense." Id. To show that a defendant was prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus. The failure to prove one prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong.State v. Madrigal, 87 Ohio St.3d 378, 389, 2000-Ohio-448, citing Strickland at 697.
 {¶ 22} Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel.Strickland, 466 U.S. at 689. In Ohio, a properly licensed attorney is presumed competent. State v. Lott (1950),51 Ohio St.3d 160, 174.
 {¶ 23} First, appellant argues that his counsel should not have allowed him to take the stand, and the decision to do so constituted ineffective assistance of counsel. Whether or not a defendant testifies is purely a tactical decision. State v. Bey
(1999), 85 Ohio St.3d 487, 499, quoting Brooks v. Tennessee
(1972), 406 U.S. 605, 612. Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion. State v. Winchester, 8th Dist. No. 79739, 2002-Ohio-2130, at ¶ 12, citing Hutchins v.Garrison (1983), 724 F.2d 1425, 1436 and Lema v. United States
(1993), 987 F.2d 48, 52-53. Appellant neither alleges nor demonstrates that there was any coercion by his attorney to get him to testify.
 {¶ 24} Furthermore, an attorney does not have a duty to try and dissuade his client from testifying. The ultimate decision of whether a defendant will testify on his own behalf is the defendant's. State v. Edwards (1997), 119 Ohio App.3d 106, 109, quoting Government of the Virgin Islands v. Weatherwax (1996),77 F.3d 1425, citing Jones v. Barnes (1983), 463 U.S. 745, 751. The record indicates appellant felt compelled to testify in order to share his side of the story. During direct examination, he specifically stated, "I figured the only way the truth's going to come out is if I come up here [to the stand] and talk." As appellant has not shown any evidence of coercion, and the ultimate decision to testify was his own, we find that appellant's counsel did not fail in any duty to his client by permitting appellant to take the stand in his own defense.
 {¶ 25} Appellant next argues that his counsel should not have questioned him on direct examination about his prior crimes and acts. Appellant maintains that such questioning effectively "opened the door" to the state's questioning of these same crimes and acts.
 {¶ 26} Evid.R. 609(A)(2) provides, in pertinent part:
 {¶ 27} "For the purpose of attacking the credibility of a witness:
 {¶ 28} "* * *
 {¶ 29} "(2) Notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted * * *."
 {¶ 30} "Evidence of other crimes which is permitted to come before the jury due to defense counsel's neglect, ignorance or senseless disregard of the defendant's rights and which bears no reasonable relationship to a legitimate trial strategy has been held to render the assistance of counsel ineffective." State v.Martin (1987), 37 Ohio App.3d 213, 214.
 {¶ 31} Appellant's trial counsel was neither negligent nor acting in disregard of appellant's rights in the introduction of evidence of other acts. The questioning of appellant's prior acts bore a reasonable relationship to a legitimate trial strategy. By choosing to take the witness stand, defendant placed his credibility in issue. See State v. Porter (1968),14 Ohio St.2d 10. Because defendant chose to take the stand, his prior convictions were admissible under Evid.R. 609(A), and therefore, were likely to be brought out by the prosecution on cross-examination. See State v. Milburn (Aug. 24, 1993), 10th Dist. No. 89AP-655.
 {¶ 32} The court in State v. Delgado (June 11, 1992), 8th Dist. Nos. 60587, 60588, held that:
 {¶ 33} "A knowledgeable trial counsel in an attempt to diminish the impact of an accused's character on the jury when introduced by the prosecution, can preempt the prosecution by first introducing such a character trait. It is a trial tactic that we cannot consider unreasonable as a matter of law. An appellate court should not second guess a trial counsel's trial tactics based on the results of a trial since no one can precisely predict which tactics will succeed or fail in any particular case."
 {¶ 34} In State v. Brown, 5th Dist. No. 2003-CA-01,2004-Ohio-3368, the court rejected a similar ineffectiveness claim, holding:
 {¶ 35} "In the case at bar, the defense was that the victim had consensual sex with appellant and therefore was lying about a rape. The credibility of the appellant and the victim were central to a determination of the issues. Accordingly, `there was greater, not less compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed.' State v. Goney (1993), 87 Ohio App.3d 497, 502."
 {¶ 36} In this situation, defense counsel's decision to question defendant about his prior convictions was a reasonable, tactical decision intended to lessen the impact of defendant's prior convictions on the jury. State v. Peoples (1971),28 Ohio App.2d 162, 168. It, therefore, cannot constitute ineffective assistance of counsel.
 {¶ 37} Appellant lastly contends that his counsel failed to object "vigorously" to the state's cross-examination of him and other witnesses, thereby constituting ineffective assistance of counsel.
 {¶ 38} A defendant "opens the door" to cross-examination on a particular subject when he raises it on direct examination as part of his theory of defense. State v. Cockroft, 10th Dist. No. 04AP-608, 2005-Ohio-748, at ¶ 15, citing State v. Gowdy
(2000), 88 Ohio St.3d 387, 397. In the present case, appellant cannot open the door to the issue and then seek to close it right behind him. The state was clearly permitted to cross-examine appellant on the matters raised first by defense counsel on direct examination. See State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 98; State v. Maurer, 15 Ohio St.3d 239,263 ("[a] witness may be properly cross-examined as to all relevant facts developed by the examination in chief").
 {¶ 39} Appellant, however, notes that such "door opening" interrogation is not without its limits, and that the state overstepped the provisions of Evid.R. 403. Appellant cites toState v. Hirsch (1998), 129 Ohio App.3d 294, paragraph two of the syllabus, in support of his argument:
 {¶ 40} "Though evidence of a prior conviction * * * was admissible, the state pursued an ill-advised strategy of eliciting great detail about that conviction as part of a clear attempt to paint the defendant as a violent, dangerous individual. `Other acts' evidence is subject to the fairness requirements of Evid.R. 403(A) * * *."
 {¶ 41} Nevertheless, similar to the court in Hirsch, we find that even where the prosecution's focus on every detail of the prior crimes nearly tips the balance that the probative value not be outweighed by the danger of unfair prejudice, where the "quantum of other evidence" against the defendant is great, the danger is minimized. Id. Furthermore, appellant failed to prove that, were it not for counsel's errors, the result of the trial would have been different. Bradley, 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
 {¶ 42} In Appendix B of his brief, appellant lists more than 100 questions posed by the state to appellant and other witnesses that he finds objectionable. Most of the questions he alleges to be speculative, repetitive, or leading. Appellant also argues that the state improperly inserted its own testimony while asking questions.
 {¶ 43} Evid.R. 611(C) states:
 {¶ 44} "(C) Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. * * *"
 {¶ 45} It is within the discretion of the trial court to permit the state to ask leading questions of its own witnesses.State v. Miller (1988), 44 Ohio App.3d 42, 45; State v.Madden (1984), 15 Ohio App.3d 130, 133. As the court inMiller, 44 Ohio App.3d at 45, noted: "the exception `except as may be necessary to develop his testimony' is quite broad and places the limits upon the use of leading questions on direct examination within the sound judicial discretion of the trial court." Of the many allegedly leading questions in this case, most of them were not leading, or were follow-up questions that clarified or summarized information the witness had already discussed. Moreover, it is well settled that trial counsel's failure to make objections are "within the realm of trial tactics" and do not establish ineffective assistance of counsel.State v. Hunt (1984), 20 Ohio App.3d 310, 311. In Hunt, the appellate court noted that the "mere failure to make objections which seem appropriate after the fact does not establish prejudicial error as a deprivation of the Sixth Amendment right to counsel. (Citation omitted.)" Id. Appellant's claim of ineffective assistance of counsel does not provide this court with carte blanche review of the trial tactics employed by counsel. State v. Taylor (Sept. 30, 1999), 6th Dist. No. L-98-1377. If appellate courts second-guessed every strategy employed at each phase of a jury trial, the process of truth-seeking would grind to a halt. Id.
 {¶ 46} After a careful review of the record, we are not convinced that the trial result would have been any different had counsel conducted the trial in the ways now argued by appellant. Appellant has failed to prove that his counsel fell below an objective standard of reasonable representation and has failed to show any prejudicial result. Further, "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. * * *" Strickland,466 U.S. at 700. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 47} In his second assignment of error, appellant asserts there was insufficient evidence to support the verdicts below, and the verdicts were against the manifest weight of the evidence.
 {¶ 48} The Supreme Court of Ohio has ruled that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 49} Under a manifest weight standard, however, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony.Thompkins, 78 Ohio St.3d at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weights heavily against conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 50} Appellant was convicted of aggravated burglary, kidnapping and rape. R.C. 2911.11(A)(1) sets forth the offense of kidnapping and states, in material part: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit * * * any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;"
 {¶ 51} Kidnapping is barred by R.C. 2905.01(A)(2), which reads, in relevant part: "(A) No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: * * * (2) To facilitate the commission of any felony * * * [.]"
 {¶ 52} Rape is proscribed by R.C. 2907.02(A)(2), and states: "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" means, inter alia, vaginal intercourse between a male and female and fellatio "between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 53} After a thorough review of the record, we conclude that the evidence presented at trial supported the jury's verdicts and convictions of appellant as to all three charges. Given this evidence, we cannot say that the verdicts were unsupported by the evidence or were against the manifest weight of the evidence. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 54} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J. Pietrykowski, J. Parish, J. concur.
[1] Appellant was convicted of rape in Lucas County on May 6, 2005.