[Cite as *State v. Kennard*, 2016-Ohio-2811.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


State of Ohio,                                      :

    Plaintiff-Appellee,                      :
                                         No. 15AP-766
v.                                                 :       (C.P.C. No. 14CR-6066)

James D. Kennard,                                  :       (REGULAR CALENDAR)

    Defendant-Appellant.                     :


D E C I S I O N

Rendered on May 3, 2016


**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Painter & Westfall, LLC*, and *Nathan D. Painter*, for appellant.


APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, James D. Kennard, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of domestic violence, in violation of R.C. 2919.25, a felony of the third degree. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 14, 2014, the victim, C.P., left home at around 2:30 a.m. and headed to the South Hamilton Road headquarters of her employer, the Columbus Dispatch, where she worked as a newspaper delivery person. As she was loading newspapers into her vehicle in the Dispatch parking lot, appellant arrived in a vehicle with an unidentified driver. Appellant got out of the vehicle and began screaming at C.P. about the return of his personal property. According to C.P., appellant then grabbed her by the

throat, pushed her up against her car, and punched her in the face.  C.P. testified that a bystander who saw the incident yelled at appellant to get away from her and leave the area before he called police.  Appellant jumped back in his vehicle and fled the scene.

{¶ 3}   On November 14, 2014, a Franklin County Grand Jury indicted appellant on one count of domestic violence, in violation of R.C. 2919.25, a felony of the third degree.  The indictment included the allegation that appellant had four prior convictions for domestic violence.  Prior to trial, the parties stipulated that the court had previously convicted appellant of domestic violence in 2012 and 2013.  Copies of the court's prior judgment entries were admitted into evidence as State's exhibits D1 and D2.  The prosecutor read the stipulation to the jury at the close of plaintiff-appellee's, State of Ohio, case.

{¶ 4}   At trial, C.P. testified that she met appellant in June 2007 when he and C.P.'s son-in-law moved into her home after they secured temporary employment in Columbus.  Shortly thereafter, C.P. and appellant entered into a romantic relationship.  Six weeks after appellant moved in with C.P., he began sleeping in her bed, and she began supporting him financially during his frequent periods of unemployment.  According to C.P., in 2012, she and appellant began "really fighting bad."  (June 24, 2015 Tr. 12-13.)  C.P. testified that appellant "went to jail" after he physically assaulted her and that she testified against appellant at his 2012 trial for domestic violence.  (June 24, 2015 Tr. 21.)

{¶ 5}   C.P. related that she let appellant come back after he served his jail sentence and that the two resumed living together as a couple.  In 2013, C.P. and appellant got into another violent altercation.  During that incident, appellant reportedly told C.P. "I and you will die before I ever do another day in jail." (June 24, 2015 Tr. 22.)  C.P. testified that she was "pretty beat up" after this assault.  (June 24, 2015 Tr. 23.)  Appellant was again prosecuted for domestic violence, but this time CP chose not to testify at appellant's trial.  Appellant was convicted of domestic violence by the trial court in 2013 and sentenced to a term of imprisonment.  C.P. testified that when appellant was released from jail approximately one year later, she "would not let him come back." (Tr. 17.)  C.P. estimated that the relationship was over by March 2014.  The two, however, remained in touch up until the August 14, 2014 incident at issue here.

{¶ 6} Jama Paas was working at the Dispatch on August 14, 2014. Paas testified that she is acquainted with C.P. because they both work at the Dispatch location on South Hamilton Road. Paas also knew appellant because appellant had previously worked for the Dispatch at the same location. With regard to the incident of August 14, 2014, Paas testified that she heard a commotion in the parking lot and saw two people screaming at each other, one male and one female. According to Paas, the male had the female pinned to a vehicle so she ran inside to get help. Paas testified that she recognized appellant and C.P. as the two people involved in the altercation. Pass told the jury that she saw C.P. in the office five or six minutes later and that she had marks on her arms and face. Paas related that the incident took place between 3:00 and 3:30 a.m. Paas testified that she did not speak to C.P. about the incident after that day other than to volunteer as a witness in any subsequent prosecution of appellant.

{¶ 7} Timothy Sledd was also working at the Dispatch on the day of the assault. Sledd testified that he was speaking with C.P. in the parking lot when appellant drove up in a small car. Sledd recognized appellant because he had previously worked at the Dispatch. Sledd stated that someone else was driving the vehicle but that he did not get a look at the person. According to Sledd, appellant jumped out of the vehicle and "ran up on" C.P. (Tr. Vol. I, 42.) Sledd saw appellant push C.P. up against her van and put his hands around her throat. When Sledd took a step toward appellant, appellant let go of C.P.'s throat and jumped back in his vehicle before it sped away. Sledd remembered that appellant put his finger in C.P.'s face, but he could not remember whether he saw appellant strike her in the face.

{¶ 8} Appellant took the witness stand in his own defense. He denied that he went to the Dispatch office on South Hamilton Road on the morning in question, and he denied assaulting C.P. He further stated that C.P. was mad at him because she was jealous that he had a new girlfriend and had moved on with his life. He testified that C.P. threatened she would send him to jail for three to five years. According to appellant, C.P. had been harassing him over the telephone on the day of August 13, 2014 and that he called the police to report it. Appellant testified that when police showed up at his home on the morning of August 14, 2014, he was shocked by the accusations made against him.

Appellant reportedly showed the arresting officer numerous, harassing text messages C.P. sent to him on the previous day.

{¶ 9} Appellant admitted that he spent approximately one year in prison for his December 2, 2013 conviction for domestic violence. He also acknowledged that the court imposed a two-year probationary period for that conviction along with an order of protection for C.P. Appellant knew that a conviction for domestic violence would constitute a violation of his probation.

{¶ 10} Appellant called his friend, Joe Eyre, as a witness. Eyre testified that he has known appellant since 1980 and that appellant temporarily moved into his home for a six-month period beginning July 2014. According to Eyre, appellant had a construction job at that time, and he routinely drove appellant to his job site in the morning because appellant did not have a driver's license. Eyre stated that appellant usually got a ride home in the afternoon either from his girlfriend, his boss, or a neighbor. Eyre testified that appellant came home from work in the late afternoon on August 13, 2014 and that he never heard or saw appellant leave the house thereafter. On cross-examination, Eyre admitted that he went to bed around midnight and that he was sleeping in another room at 3:00 a.m. Consequently, he could not testify that he saw appellant at home at the time of the assault.

{¶ 11} The jury found appellant guilty of domestic violence. On July 3, 2015, appellant filed a motion for a new trial, pursuant to Crim.R. 33, and a motion for acquittal notwithstanding the verdict pursuant to Crim.R. 29(C). On July 16, 2015, the trial court denied both motions and proceeded to sentencing. On July 21, 2015, the trial court issued a judgment entry convicting appellant of domestic violence and sentencing appellant to thirty months in prison followed by three years of mandatory post-release control.

{¶ 12} Appellant timely appealed to this court from the judgment of the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as error:

> 1. Appellant was denied effective assistance of counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to object to the introduction of evidence relating to prior domestic

> violence convictions when the prior convictions had already been stipulated to between the parties.
>
> 2. Appellant was denied effective assistance of counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to investigate and subpoena witnesses to support his alibi defense.
>
> 3. Appellant was denied effective assistance of trial counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to investigate and obtain evidence readily available to trial counsel contradict victim's testimony.

## III. STANDARD OF REVIEW

{¶ 14} Appellant asserts ineffective assistance of trial counsel in each of his three assignments of error. In Ohio, a properly licensed attorney is presumed competent. *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 80, citing *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 301 (1965). Therefore, the burden of demonstrating ineffective assistance of counsel is on the party asserting it. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). In order to succeed on a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. The first prong requires appellant to demonstrate that his trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If he can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance. *Id.* The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697.

{¶ 15} To demonstrate that counsel's performance was deficient, appellant must show that his counsel committed errors which were " 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *State v. Phillips*, 74 Ohio St.3d 72, 101 (1995), quoting *Strickland* at 687. In this regard, appellant must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland* at 689. To show prejudice, appellant must establish there is a reasonable probability that, but for his

counsel's unprofessional errors, the result of the trial would have been different.  *Id.* at 694.  A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial [court] cannot be relied on as having produced a just result."  *Id.* at 686.  " '[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.' "  *Bradley* at 143, quoting *Strickland* at 697.

## IV.  LEGAL ANALYSIS

### A.  First Assignment of Error

{¶ 16} In his first assignment of error, appellant claims that his trial counsel provided ineffective assistance by failing to object to C.P.'s testimony regarding prior instances of domestic violence when the parties had stipulated to the two convictions.  In his merit brief, appellant specifically argues: "The testimony elicited from [C.P.] not only included a general narrative of what happened between the two but also specifics as to prior injuries and even jail time.  This was done without objection from [trial] counsel." (Appellant's Brief, 17-18.)  Appellant contends that such evidence is prohibited character evidence under Evid.R. 404(B).

{¶ 17} Appellee counters that appellant's trial counsel could not have rendered ineffective assistance of counsel by failing to object to C.P.'s testimony regarding the facts underlying appellant's prior convictions because her testimony was admissible for purposes other than to prove appellant's propensity to commit domestic violence. Appellee maintains that even though the parties have stipulated to the prior conviction for domestic violence, the facts underlying the convictions may be admissible evidence in a subsequent prosecution for domestic violence where such evidence is probative of appellant's identity or intent.  *See State v. Partlow*, 10th Dist. No. 12AP-459, 2013-Ohio-2771; *State v. Thompson,* 9th Dist. No. 98CA007112 (Mar. 1, 2000) (in prosecution of defendant for domestic violence under R.C. 2919.25(C), facts underlying prior conviction for domestic violence were admissible even though defendant had stipulated to prior conviction where evidence was offered to prove the victim's fear of the defendant and defendant's knowledge thereof).

{¶ 18} These arguments notwithstanding, appellant's failure to make either showing under the *Strickland* standard defeats a claim of ineffective assistance of counsel. *Bradley* at 143; *Strickland* at 697. Even assuming that C.P.'s testimony regarding the facts underlying appellant's prior convictions was inadmissible character evidence, in order for appellant to succeed on a claim of ineffective assistance of counsel, appellant must show that he was prejudiced by counsel's failure to object to the erroneous admission of such evidence. *Smith* at 100; *Strickland* at 687. In the context of a claim of ineffective assistance of counsel, to show prejudice, appellant must establish there is a reasonable probability that but for his counsel's errors, the result of the trial would have been different. *Id.* at 694. On this record, we cannot say that the outcome would have been any different had the inadmissible character evidence been excluded.

{¶ 19} In addition to C.P.'s testimony, there were two eyewitnesses to the assault on C.P. who corroborated the essential details of her account of the incident. Both Paas and Sledd knew appellant because he had worked at the Dispatch, and they identified him as the person who assaulted C.P. in the Dispatch parking lot on August 14, 2014. Sledd was standing in the parking lot and conversing with C.P. when the assault took place, and he has first hand knowledge of the events that transpired on the day in question. With the exception of some minor details, Sledd's testimony regarding the assault is nearly identical to C.P.'s. Additionally, Paas' testimony about the events she observed is consistent with the story C.P. and Sledd told to the jury. Although appellant insisted that C.P.'s jealousy motivated her to lie, there is nothing in the record to support a finding that Paas or Sledd harbored any prior ill will toward appellant or had any other reason to lie about the events they witnessed on August 14, 2014.

{¶ 20} On this record, the exclusion of evidence regarding the facts underlying appellant's prior convictions would not have changed the outcome of the trial. Consequently, trial counsel's failure to object to the evidence does not constitute ineffective assistance of counsel under the *Strickl*and standard. *See, e.g., State v. Hohvart*, 7th Dist. No. 06 MA 43, 2007-Ohio-5349, ¶ 17 (trial counsel's failure to object to erroneous admission of defendant's prior acts of domestic violence did not rise to the level of ineffective assistance of counsel where "[i]t is difficult to imagine that the outcome of the trial would have been different if evidence * * * would have been excluded" and where

defendant's testimony as to an alternative cause of his wife's injuries was not believable); *State v. Kelley*, 1st Dist No. C-140112, 2014-Ohio-5565 (although the trial court erred by allowing the state to inquire into the prior incident of domestic violence which defendant had allegedly committed against his wife, it was not plain error since the outcome of the trial would not have been different but for the error); *State v. Hensley*, 12th Dist. No. CA2009-11-156, 2010-Ohio-3822 (although the trial court erred by admitting the evidence regarding the previous acts of domestic violence, the error was harmless because even without the evidence of defendant's prior bad acts, the evidence of his guilt was overwhelming).

{¶ 21} For the foregoing reasons, we hold appellant has failed to show that he was prejudiced by the alleged deficient performance of counsel. Consequently, appellant has failed to meet the second prong of the two-pronged *Strickland* test. *Bradley* at 143, quoting *Strickland* at 697. Accordingly, we overrule appellant's first assignment of error.

### B. Second and Third Assignments of Error

{¶ 22} Because appellant's second and third assignments of error involve similar claims of ineffective assistance, we will consider them together. In his second assignment of error, appellant contends that his trial counsel was ineffective for failing to investigate and subpoena witnesses who might corroborate his alibi defense. In his third assignment of error, appellant claims that his trial counsel was ineffective for failing to investigate and obtain evidence that could have been used to impeach C.P.'s trial testimony. More particularly, appellant argues that had trial counsel consulted the records of the 911 calls made to police on the date of the assault, counsel would have learned that C.P. did not call police on the date of the incident as she had claimed at trial.

{¶ 23} A claim of ineffective assistance of trial counsel may exist where the record shows that the defendant's attorney failed to conduct a reasonable investigation into a defendant's case. *State v. Phipps*, 10th Dist. No. 13AP-640, 2014-Ohio-2905, ¶ 69, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 104. However, where proof outside the record is required to support a claim of ineffective assistance of trial counsel, the claim is "purely speculative and * * * 'it is not appropriate for consideration on direct appeal.' " *Id.*, quoting *State v. Zupancic*, 9th Dist. No. 12CA0065, 2013-Ohio-3072, ¶ 4, citing *State v. Madrigal*, 87 Ohio St.3d 378, 390-91 (2000). For the same reason, " ' "a claim of

ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings * * * [and] [s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." ' " *Id.*, quoting *Zupancic* at ¶ 4, quoting *State v. Leyland*, 9th Dist. No. 23833, 2008-Ohio-777, ¶ 7.

{¶ 24} In this instance, appellant relies on proof outside the record as support for the claims of ineffective assistance of trial counsel asserted in his second and third assignments of error. When allegations of ineffective assistance of counsel hinge on facts outside the record, the proper remedy is a petition for postconviction relief rather than a direct appeal. *State v. Hillman*, 10th Dist. No. 14AP-252, 2014-Ohio-5760, ¶ 57.

{¶ 25} The second assignment of error references 911 records that allegedly contradict a portion of C.P.'s trial testimony. These records are not part of the trial court record. Consequently, appellant's claim of ineffective assistance of trial counsel based on the 911 calls is not properly before us in this action. *Id.*

{¶ 26} In his third assignment of error, appellant contends that had trial counsel conducted a better investigation, counsel could have uncovered additional evidence to support his claim that he was asleep in his bed at the time of the offense. The record in this case does not contain any indication that such evidence exists. Thus, it is pure speculation to conclude that the result of appellant's trial would have been different had any additional evidence been discovered. *State v. Quinnie*, 10th Dist. No. 12AP-484, 2013-Ohio-1208, ¶ 23, citing *State v. Williams*, 10th Dist. No. 08AP-719, 2009-Ohio-3237, ¶ 35. "As this court has stated, '[i]t is impossible for a court to determine on a direct appeal from a criminal conviction whether counsel was ineffective in his or her representation where the allegations of ineffectiveness are based on facts outside the record.' " *Id.*, quoting *State v. Reinhardt*, 10th Dist. No. 04AP-116, 2004-Ohio-6443, ¶ 49. Even if appellant was able to demonstrate that his trial counsel erred by failing to identify and subpoena witnesses, a determination of appellant's claim of ineffective assistance of counsel would require evidence outside the record to establish that counsel's inaction prejudiced appellant. *Hillman* at ¶ 57.

{¶ 27} Although not expressly raised by appellant's second or third assignments of error, appellant also challenges trial counsel's performance with regard to defense witness

Eyre.    First, appellant claims that if competent trial counsel conducted a reasonable investigation into appellant's case, counsel would have elected not to call Eyre as a witness given his inability to verify that appellant was asleep in bed when the crime was committed.    The decision whether or not to call a particular witness is a matter of trial strategy.  *See State v. Dean*, Slip Opinion No. 2015-Ohio-4347, ¶ 288.  The courts must be highly deferential of such decisions and indulge a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance in reviewing a claim of ineffective assistance of counsel.  *Id.*  *See also State v. Jeffers*, 10th Dist. No. 10AP-1112, 2011-Ohio-3555, ¶ 9.  Eyre's trial testimony partially corroborated appellant's claim that he was home at the time of the offense.  Although Eyre did not provide appellant with an air-tight alibi, we cannot say that trial counsel's decision to call Eyre as a witness fell outside the range of reasonable professional assistance.  *Dean* at ¶ 288 (debatable trial tactics do not constitute ineffective assistance of trial counsel).

{¶ 28} Appellant also claims that trial counsel provided ineffective assistance in the direct examination of Eyre.  More particularly, appellant argues that trial counsel failed to conduct an investigation into Eyre's criminal history which would have revealed that Eyre had previously pleaded guilty to disorderly conduct.  The record in this case does not support appellant's claim.  During direct examination, appellant's trial counsel asked Eyre if he had "ever been convicted of any crime of deceit?"  (Tr. Vol. I, 85.)  Rather than simply answering "no," Eyre volunteered that he had previously been charged with a crime in "an episode where me and my stepson had an altercation * * * [b]ut that was all dismissed."  (Tr. Vol. I, 85.)  Because of Eyre's spontaneous declaration, the prosecutor was able to impeach Eyre's credibility on cross-examination by compelling him to admit that he had pleaded guilty to disorderly conduct in connection with the altercation with his stepson.

{¶ 29} Contrary to appellant's assertion, the transcript does not reveal that trial counsel's performance was deficient in that counsel was unaware of Eyre's prior conviction.  Rather, the transcript shows appellant's trial counsel knew that Eyre had not been convicted of a crime involving dishonesty which might be used to impeach Eyre's credibility under Evid.R. 609(3).  Thus, the record does not reveal error on the part of appellant's trial counsel with regard to the direct examination of Eyre.  Moreover, the

decision whether to raise a witness's prior convictions during direct examination is a matter of trial strategy. *State v. Ryan*, 6th Dist. No. WD-05-064, 2006-Ohio-5120, ¶ 33. "We will only reverse on trial strategy grounds if defense counsel's trial strategy deviated from the standard of reasonableness." *State v. Silverman*, 10th Dist. No. 05AP-837, 2006-Ohio-3826, ¶ 148, citing *State v. Burgins*, 44 Ohio App.3d 158, 160 (4th Dist.1988). In our view, trial counsel's line of questioning did not deviate from the standard of reasonableness.

{¶ 30} Because the record does not demonstrate that trial counsel's performance was deficient or that appellant suffered prejudice as a result of an alleged deficiency in counsel's performance, appellant has failed to establish a meritorious claim of ineffective assistance of trial counsel. Accordingly, appellant's second and third assignments of error are overruled.

## V. CONCLUSION

{¶ 31} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____