[Cite as *State v. Howard*, 2019-Ohio-4274.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| DARTANIAN HOWARD, | : | Case No. 2019CA00021 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court
of Common Pleas, Case No. 2018-
CR-1827

JUDGMENT: Affirmed

DATE OF JUDGMENT: October 15, 2019

APPEARANCES:

For Plaintiff-Appellee                           For Defendant-Appellant

JOHN D. FERRERO                              BERNARD L. HUNT
Prosecuting Attorney                            2395 McGinty Rd N.W.
Stark County, Ohio                               North Canton, Ohio 44720

By: KRISTINE W. BEARD
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1} Defendant-appellant Dartanian Howard appeals his conviction and sentence from the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶2} On November 14, 2018, the Stark County Grand Jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, one count of having weapons while under disability in violation of R.C. 2923.13(A)(2) and/or (A)(3), a felony of the third degree, and one count of assault in violation of R.C. 2903.13(A), a misdemeanor of the first degree.   At his arraignment on November 16, 2018, appellant entered a plea of not guilty to the charges.

{¶3} Subsequently, a jury trial commenced on January 3, 2019. The following testimony was adduced at trial.

{¶4} On September 26, 2018 Raylynn Jackson and her husband, Tyler, were on their porch smoking at approximately 9:00 p.m. Raylynn testified that she heard screaming in front of her house and observed three men arguing with the man who lived next door. She testified that one of the three men was known as "Darty" and that she had seen him probably six times before. After Raylynn and her husband walked off of their porch, and her husband walked over to the men and asked them to leave, a verbal altercation ensued. She testified that appellant pushed her in the shoulder/chest area and that she hit him in defense. According to Raylynn, someone then pulled her hair, although she was unsure who had done so. Tyler Jackson then started fighting with appellant. Raylynn testified that she did not have any injuries and was not hurt.

**{¶5}** Raylynn further testified that appellant, during the altercation, pulled out a gun from the front of his pants and started aiming it and that her husband grabbed appellant's wrist. The gun then fired off between his legs. Appellant smacked her husband in the back of the head with the gun, causing him to bleed. Everyone then started to scatter. Raylynn identified appellant in court as the man who had shoved her and been in an altercation with her husband.

**{¶6}** On cross-examination, Raylynn admitted that she never mentioned to the investigator for the Public Defender that her hair had been pulled, but she testified that she had told the police. She also admitted that she did not get a good look at the gun.

**{¶7}** Tyler Jackson testified that the men were screaming profanity and seemed to be drunk and that he asked them if they could please leave. He further testified that appellant pushed Raylynn away and that "as she was falling I grabbed her, and that's when I progressed towards him and that's when I, you know, I punched him." Trial Transcript at 138. The following testimony was adduced when Tyler Jackson was asked what happened next:

**{¶8}** A. He [appellant] goes and he starts reaching towards his waist so I was afraid that maybe he had a gun or something so I, you know, rush towards him, you know, because I didn't – you know, my kids are in my house and everything and I didn't want nothing to happen. And that's when he pulled the gun out and I grabbed his wrist, and that's when he fired the shot between my feet.

**{¶9}** Trial Transcript at 140. When asked, he testified that he did not see the gun, but felt it on the back of his head. He further testified that he felt something hit him in the back of the leg and did not know if he had been shot. Tyler Jackson was not able to give

a description of the gun. He also testified that he got hit in the back of his head and that the police took pictures of his head. He did not go to the hospital that night because the police had not yet arrested appellant and he was afraid to leave his wife and children at home.  The next day, Tyler Jackson identified appellant from a photo line-up prepared by Detective Walker of the City of Canton Police Department.

{¶10}  On cross-examination, Tyler Jackson testified that he never saw any gun but heard what appeared to be a shot being fired. He testified that he went to the doctor on October 1, 2018 and told the doctor about his head injury, but never told the doctor about an injury to his leg. He testified that he thought the injury to his leg was just a bruise but had told the police that he believed that he was hit in the back of his leg by a bullet. The police did not take any photographs of his leg.

{¶11}  Sergeant Michael Roberts of the City of Canton Police Department testified that he took photographs of injuries to Tyler Jackson's head on September 26, 2018 although the photographs contained a date stamp of September 28, 2018. He testified that the picture date was automatically embedded by the camera itself and that the date discrepancy was created by the camera. He testified that he located an unspent .25 caliber bullet in the street and gave it to Officer Marino who tagged it into evidence.

{¶12}  On cross-examination, Sergeant Roberts testified that the patrol officers in his department are normally equipped with body worn cameras and it was policy to turn them on when a call was received by dispatch. However, no body camera videos were located for this case.  Additionally, the citywide Shotshooter, which records all gun shots in the city, did not alert to any shots fired on that night. No spent shell casings were

recovered and the police did not have gunshot residue testing performed on either appellant or his clothing or Tyler Jackson or his clothing.

{¶13} Detective Michael Walker of the Canton Police Department testified that he spoke with appellant the day after the incident and that appellant admitted that he was in the area to see a woman named Victoria and that he had been in a confrontation with the Jacksons. He testified that appellant never gave any indication that there was a firearm there and that appellant said that he heard a slap or a clap at some point in time during the incident. Appellant offered to provide his clothing for gunshot residue testing. No fingerprint evidence was taken from appellant. Appellant did not immediately leave the scene after the incident. Detective Walker was not able to locate Victoria.

{¶14} At the conclusion of the States' case, defense counsel moved for a Crim.R. 29 judgment of acquittal that was overruled. Appellant then called Officer Robert Flaherty, the Police Technology Officer with the Canton Police Department. He testified that he did not locate any body camera evidence for this case. After defense counsel renewed the motion for acquittal, it was again overruled by the trial court.

{¶15} Nathanial Russell, the next door neighbor, testified that appellant was one of his good friends. He testified that Raylynn Jackson ran up to appellant and "started getting in his face, poking him in the face…" Trial Transcript at 323-324. He testified that appellant pushed her to get her to stop touching him. Russell testified that he never saw appellant with any kind of gun or weapon and that appellant never shot a gun during the incident. Russell testified that he was trying to break up the confrontation. He testified that he did not know how Tyler Jackson was injured and did not see the back of his head

bleeding. Russell further testified that he heard a loud noise during the altercation, but did not know what it was.

**{¶16}** Defense counsel's Crim.R. 29 motion was again denied.

**{¶17}** At the conclusion of the evidence and the end of deliberations, the jury, on January 4, 2019, found appellant not guilty of felonious assault and having weapons while under disability but guilty of assault. Appellant was sentenced to 100 days in jail and ordered to pay a fine in the amount of $250.00.

**{¶18}** Appellant now raises the following assignments of error on appeal:

**{¶19}** "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S RULE 29 MOTION FOR ACQUITTAL."

**{¶20}** "II. THE DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

**{¶21}** "III. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I, III

**{¶22}** Appellant, in his first assignment of error, argues that the trial court erred in denying his Crim.R. 29 motion with respect to assault. In his third assignment of error, he contends that his conviction for assault is against the manifest weight and sufficiency of the evidence.

**{¶23}** Criminal Rule 29(A) provides a court must order the entry of a judgment of acquittal on a charged offense if the evidence is insufficient to sustain a conviction on the offense. Crim. R. 29(A). However, "a court shall not order an entry of judgment of acquittal

if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005, 2011 WL 2448972, ¶ 43, citing *State v. Miley,* 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996).

{¶24} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Perkins,* 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541.

{¶25} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered'." *Thompkins*, supra at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶26}** "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. The trier of fact is in the best position to judge the credibility of the witnesses.

**{¶27}** Appellant was convicted of the assault of Raylynn Jackson in violation of R.C. 2903.13(A). R.C. 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." R.C. 2901.22(B) states as follows, "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

**{¶28}** In the case sub judice, there was testimony from Raylynn Jackson and her husband that appellant shoved Raylynn, causing her to fall backwards. Raylynn also testified that appellant pulled her hair.

**{¶29}** We find that taking the evidence in a light most favorable to the prosecution, the evidence was sufficient to overcome a motion for acquittal on assault and that the jury did not lose its way in convicting appellant of assault. There was evidence if believed, that appellant knowingly attempted to cause physical harm to Raylynn Jackson.

**{¶30}** Appellant's first and third assignments of error are, therefore, overruled.

II

**{¶31}** Appellant, in his second assignment of error, contends that he received ineffective assistance of trial counsel.

**{¶32}** To prevail on a claim of ineffective assistance of counsel, a defendant "must satisfy a two-prong test." *State v. Kennard*, 10th Dist. No. 15AP-766, 2016-Ohio-2811, ¶ 14, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, a defendant must "demonstrate that his trial counsel's performance was deficient." *Id.* If a defendant "can show deficient performance, he must next demonstrate that he was prejudiced by the deficient performance." *Id.* A defendant's "failure to make either showing defeats a claim of ineffective assistance of counsel." *Id.*, citing *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697, 104 S.Ct. 2052.

**{¶33}** In order to demonstrate deficient performance by counsel, a defendant "must show that his counsel committed errors which were so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at ¶15 (Quotations omitted). Further, a defendant "must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance." *Id.*, citing *Strickland* at 689. In order to show prejudice, a defendant "must establish there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different." *Id.*, citing *Strickland* at 689.

**{¶34}** Appellant argues that his trial counsel was ineffective in failing to object to the introduction of photographs of Tyler Jackson's head injuries which included an incorrect photo date. As is stated above, the photographs contained a date stamp of

September 28, 2018 while Sergeant Michael Roberts testified that he took the photos on September 26, 2018.

{¶35} However, appellant was convicted of assaulting Raylynn Jackson, not Tyler Jackson. We concur with appellee that the issue of the photographs would not have effected appellant's assault conviction involving Raylynn Jackson.

{¶36} Appellant next argues that his trial counsel was ineffective in failing to subpoena Officer Marino. At trial, there was testimony that Sergeant Robert found an unspent bullet and gave it to Officer Marino. According to appellant, States' exhibit 3, which was a .25 caliber cartridge, was therefore provided to the jury without objection. Appellant also maintains that his trial counsel was ineffective in failing to object to the photo lineup provided to Tyler Jackson and used to identify appellant. Appellant asserts that the Detective who administered the photo lineup, Detective Pileggi, was not an unbiased administrator.

{¶37} We note that Raylynn Jackson identified appellant in court as the person who had assaulted her. Moreover, there was testimony that Detective Pileggi was not biased. Detective Walker testified on the record as follows:

{¶38} A. We have another detective that is not associated with our case at all.  In fact, he will not even view any of the photos in there. I put together the, the  photos, the packet, and he will – he only knows that there's ten files, and he is not – he'll even tell the subject that's reviewing them do not show me these.

So this is – it's a blind administration of it.  We want it to be unbiased and, there's no tainting of this so he can't kind of direct okay, and what about this one.  So that's why; we, we want it done as unbiased as possible.

**{¶39}** Q. All right. So the detective who's doing the administration doesn't even know who the subject is?

**{¶40}** A. No. He's not associated with this; he has no knowledge of who's even in these. Or our target; he does not know who the target is.

**{¶41}** Trial Transcript at 200.

**{¶42}** Finally, we note that with respect to all of these alleged errors, appellant has failed to establish how the outcome of his trial would have been different but for the same. Appellant has failed to establish that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial would have been different."

**{¶43}** Appellant's second assignment of error is, therefore, overruled.

**{¶44}** Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Wise, Earle, J. concur.