[Cite as *State v. Kukla*, 2023-Ohio-4209.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 112277 |
| JAMAL KUKLA, | : | |
| Defendant-Appellant. | : | |

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 22, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-650912-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alan Dowling and Anna Faraglia, Assistant Prosecuting Attorneys, *for appellee*.

Erin R. Flanagan, Esq., Ltd. and Erin R. Flanagan, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Jamal Kukla, appeals his conviction on multiple counts related to the murder of Jasmine Washington. His sole contention on appeal

is that he received ineffective assistance of trial counsel.  For the reasons that follow, we affirm.

**{¶ 2}** In June 2020, Kukla was charged with two counts of aggravated murder, unclassified felonies, pursuant to R.C. 2903.01(A) and (B); one count of murder, an unclassified felony, pursuant to R.C. 2903.02(B); one count of kidnapping, a first-degree felony, pursuant to R.C. 2905.01(A)(3); one count of felonious assault, a second-degree felony, pursuant to R.C. 2903.11(A)(1); one count of tampering with evidence, a second-degree felony, pursuant to R.C. 2921.12(A)(1); and one count of gross abuse of a corpse, a fifth-degree felony, pursuant to R.C. 2927.01(B).

**{¶ 3}** The matter proceeded to a jury trial, at which the following pertinent evidence was presented.

**{¶ 4}** On September 17, 2018, Reverend Robert Spicer of Broadway Christian Church in Cleveland, Ohio, called the church's maintenance person to inform him that a neighboring glass-blowing business called the church to complain of a strong odor emanating from church grounds.  The pastor asked the maintenance person, Victor Mullenax, to investigate the origin of the odor.  Upon investigation, Mullenax discovered the body of a woman, later identified as Washington, partially buried under a pile of debris.  He immediately called the police.

**{¶ 5}** Cleveland Police ("CPD") Sergeant Scott Navratil and Officer Michael Castiglione responded to the church just before 8:00 p.m.  Officers Navratil and Castiglione showed the jury body camera footage showing their arrival to the church.

The footage depicts the officers encountering Washington's body under a pile of debris near the back of the building, near a gap in a fence that surrounded the church's yard. Washington's body was found in a state of advanced decomposition, and she was initially unidentifiable. Law enforcement eventually identified her by the remnants of her fingerprints.

{¶ 6} Detective Troy Edge testified about the crime scene photos and identified the following items, which would later render DNA samples for testing: a coat found in nearby garbage can; tan Croc sandals; a black and gray right-handed work glove found in a field behind the church yard; a black and gray left-handed work glove found in a nearby vacant lot; a black rubber handle found behind the church; a tooth, surrounding dirt, "and a pooling of suspected blood," which lay near Washington's body; a green lighter that was found in the grass nearby; a blood covered flowerpot found by Washington's body; and a black shirt located in the field behind the church.

{¶ 7} Police also found two tools, a garden shovel and a garden weasel (a tined garden tool), covered in suspected blood, in the empty field behind the church. A church member testified that he helped take care of the church grounds and kept his tools near the church yard.

{¶ 8} Dr. Erica Armstrong, a forensic pathologist for the Cuyahoga County Medical Examiner's Office, responded to the scene and later performed the autopsy on Washington's body. Dr. Armstrong testified that despite the advanced level of decay, the severity of Washington's injuries was apparent. According to Dr.

Armstrong, Washington's skull had radiating blunt force defects and lacerations consistent with wounds from the garden weasel. Part of Washington's skull had fragmented off, her jaw was fractured in several places, and the tooth found near her body was hers. Several punctures to Washington's skull were forceful enough to bevel the opposite side of her skull from the point of impact. Washington had multiple injuries to her torso, including the right side of her chest and both thighs, and she had wounds on her hands and arms, which were consistent with self-defense injuries.

{¶ 9} Dr. Armstrong testified that she worked with a forensic anthropologist to reconstruct "a more complete skull" because of the extensive damage to Washington's head. Armstrong ruled Washington's death a homicide caused by blunt force and penetrating head trauma.

{¶ 10} Forensic scientist Lisa Przepyszny testified she works with the Cuyahoga County Regional Forensic Science Laboratory ("CCRFSL") trace evidence department, which collaborated with Dr. Armstrong. CCRFSL scientists took photographs and conducted testing on Washington's skull, the murder weapons, and other items collected from the crime scene. Przepyszny testified that the left side of Washington's skull had a rectangular injury consistent with the tip of the garden weasel. The right side of her skull and the area around her nose also suffered puncture injuries similarly matched in size to the garden weasel's tines. Przepyszny concluded that two separate strikes to Washington's face caused these wounds.

{¶ 11} CCRFSL DNA analyst Jeffrey Oblock testified he received the swabs bearing DNA samples taken from the crime scene. Oblock testified that not every swab contained enough intact DNA to test, but testable materials revealed that blood on a cinderblock near Washington's body was hers. Blood and DNA samples from the coat, the shovel handle and shaft, and the handle and tines of the garden weasel also belonged to Washington.

{¶ 12} According to Oblock, many of the DNA samples had a specific unknown male contributor. Oblock was able to use analytic software to confirm that this unknown male's DNA was in almost every test sample. Most of the DNA samples did not have any statistically significant contributor other than Washington and/or the unknown male contributor. Oblock testified that the analytic software confirmed the percent Washington and the unknown male contributed to the extent that the data ruled out any significant contribution by a party other than Washington or the unknown male.

{¶ 13} F.B.I. Special Agent Andrew Burke testified he was involved in the case. Burke authenticated crime-scene photos and testified he obtained DNA samples from members of the church community and the glass-blowing business to eliminate them as suspects.

{¶ 14} Law enforcement procured surveillance footage from the housing complex where Washington lived. The footage showed Washington leaving her apartment around 7:52 p.m., on September 11, 2018, returning briefly, and then leaving at 8:24 p.m. wearing what appears to be the coat and Croc sandals later

found at the crime scene. The video shows an individual riding past the housing complex on a bicycle during that time.

{¶ 15} Agent Burke testified that police received an investigative lead in January 2020 that implicated Kukla. Law enforcement conducted surveillance and obtained a DNA sample from Kukla by collecting a discarded cigar tip to compare to the unknown male profile.

{¶ 16} In May 2020, Agent Burke brought Kukla in for questioning and obtained a buccal swab from him. During the interview, Agent Burke showed Kukla pictures of Washington. Kukla indicated that he recognized Washington's face and that he had twice seen her around. Kukla indicated that he lived in the area around 49th Street and Broadway in 2018 and early 2019, less than a half-mile from the housing complex where Washington lived, and about three-quarters of a mile from the church where Washington's body was found.

{¶ 17} Oblock testified that, to a reasonable degree of scientific certainty, that Kukla's DNA was present on Washington's coat, the inside and outside of the left and the right work gloves, the garden shovel, and the garden weasel.

{¶ 18} Kukla made a motion for acquittal pursuant to Crim.R. 29, which the court granted as to aggravated murder and kidnapping. The trial court preserved the lesser included charge of murder. Following deliberations, the jury convicted Kukla of one count each of murder, pursuant to R.C. 2903.02(A); felony murder predicated on felonious assault, pursuant to R.C. 2903.02(B); felonious assault,

pursuant to R.C. 2903.11(A)(1); tampering with evidence, pursuant to R.C. 2921.12(A)(1); and gross abuse of a corpse, pursuant to R.C. 2927.01(B).

{¶ 19} The trial court merged Kukla's convictions for murder, felony murder, and felonious assault, and the state elected to proceed to sentencing on the murder conviction. The trial court sentenced Kukla to a mandatory term of 15 years to life in prison.

{¶ 20} It is from this conviction that Kukla appeals, raising the following assignment of error for our review:

> I. Defendant-appellant was deprived of his Sixth Amendment right to the effective assistance of trial counsel by counsel's pursuit of an unreasonable trial strategy in choosing not to identify the male in the state's video evidence to the jury.

{¶ 21} In his sole assignment of error, Kukla argues that his counsel was ineffective for failing to argue to the jury that someone other than him was in the state's video.

{¶ 22} To establish ineffective assistance of counsel, Kukla must establish "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 138, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. The failure to prove either prong

of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 23} A licensed attorney is presumed to be competent, and a defendant claiming ineffective assistance bears the burden of proof. *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). "'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.), quoting *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

{¶ 24} According to Kukla, the state

> introduced select forensic evidence, including a video of someone involved in Washington's death who the prosecution argued was Defendant-Appellant. Protesting his innocence as Kukla did throughout the entire proceeding, he and his mother informed trial counsel that the person in the video was someone other than Kukla. Defendant-Appellant and his mother watched the video many times and shared their concerns with trial counsel. Kukla's mother had (has) 100-percent certainty that the video depicts another – not only because "it's not Jamal," but also because she and Kukla are aware of the individual's identity.

{¶ 25} First, we note that Kukla does not identify which video or exhibit he is challenging, nor identify where in the record the alleged error occurred. *See* App.R. 12(A)(2) (An appellate court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the

assignment of error is based.). Assuming, as the state does, that Kukla is referring to the surveillance video that captured an individual riding a bicycle past Washington's housing complex around the time she left her apartment on the evening in question, no witnesses identified the bicyclist as Kukla, and no witness theorized that the bicyclist was involved in her death.[1]

{¶ 26} Kukla argues that he and his mother told his attorney that the person in the video was not him, but they knew the identity of the person. Kukla contends that counsel chose not to use this information, and this decision could not be the basis of any sound trial strategy; therefore, counsel was ineffective. Kukla states he suffered substantial prejudice from the inability of the jury to consider other suspects.

{¶ 27} Kukla's argument relies on information that is not in the record before us. Recently, in *State v. Jeter*, 8th Dist. Cuyahoga No. 111881, 2023-Ohio-145, this court reiterated that "'when an ineffective-assistance claim is based on evidence outside the record, the proper vehicle for raising the claim is a petition for postconviction relief, not a direct appeal.'" *Id.* at ¶ 17, quoting *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 22, citing *State v. Kennard*, 10th Dist. Franklin No. 15AP-766, 2016-Ohio-2811, ¶ 24. *See also State v. Maldonado*, 9th Dist. Lorain No. 01CA007759, 2001 Ohio App. LEXIS 4014, 15 (Sept. 12,

---

[1] In closing arguments, the state intimated that the bicyclist could have been Kukla; however, the closing arguments of counsel are not evidence, *see State v. Jackson*, 2023-Ohio-455, 208 N.E.3d 1010, ¶ 45 (8th Dist.), nor has Kukla advanced a claim that the state prejudiced his right to a fair trial due to the prosecutor's statements.

2001); *State v. Irwin*, 7th Dist. Columbiana No. 11CO6, 2012-Ohio-2704, ¶ 97 ("While evidence may exist outside the record to support an appellant's contention of ineffective assistance, a direct appeal is not the proper place to present this evidence.").

{¶ 28} Kukla's claim of ineffective assistance of counsel solely hinges on conversations he and his mother allegedly had with trial counsel that are not part of the trial court record. Consequently, a claim of ineffective assistance of counsel based on Kukla's argument herein is not properly before this court.

{¶ 29} Kukla does not raise any other claim regarding counsel's performance and has not shown that he was prejudiced by any of counsel's alleged errors; therefore, Kukla has not established ineffective assistance of trial counsel.

{¶ 30} The sole assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
SEAN C. GALLAGHER, J., CONCUR